## MORGAN, Appellant, v. STODDARD.

### Division One, March 15, 1905.

1. **PATENT: Void: Want of Authority: Extrinsic Evidence.** Even a patent from the government of the•United States may be shown to be void by extrinsic evidence, if it is such evidence as by its nature is capable of showing a want of authority for its issue.

2. ———: ———: ———: ———: **Statute: Land in Another County.** The extrinsic evidence which will show a patent issued by the State to a county to be void, is a showing that the land was not in that county and by the statute that the officers who issued it only had authority to issue patents to that county for lands situate in that county.

3. ———: ———: **Lands in One County: Patent to Another.** A patent issued by the State of Missouri to a county conveying lands lying in another county is void. And a subsequent patent issued by the county to which the State had issued it is also void. This is shown by the statute which authorized the State to convey "all the title and interest of the State of Missouri in and to such lands" as were acquired by an act of Congress "to the counties in which such lands may lie."

4. ———: **Probative Force.** Where the statute directing the conveyance by the State to the counties of swamp lands makes. the patent issued by the State to the county and that issued by the county to purchasers "prima facie evidence of title in the county," it is not conclusive evidence of title in the county, and is not of equal probative force with the patent issued by the United States conveying the land to the State, but may be shown to be void by extrinsic evidence which shows that the land conveyed did not lie in the county.

Appeal from Livingston Circuit Court.—*Hon. J. W. Alexander,* Judge.

AFFIRMED.

*Louis Benecke* and *J. M. Davis & Sons* for appellant.

(1) The patent from the United States to the State of Missouri, from the State of Missouri to Chariton county, and from Chariton county to plaintiff, vested

in plaintiff the legal title to the land described in plaintiff's petition.  Kennedy v. Daniels, 20 Mo. 104; Snow v. Cunningham, 82 Mo. 587; Romain v. Lewis, 39 Mich. 235; Carpenter v. Ingersol, 43 Mich. 433; United States v. Stone, 2 Wall. (U. S.) 535; French v. Fyan, 93 U. S. 172; Steele v. Railroad, 106 U. S. 447; Heeler v. Gist, 27 Ark. 301; Boynton v. Haggart, 120 Fed. 828; Blackslee v. Blackslee, 129 N. Y. 155; 26 Am. and Eng. Ency. Law (2 Ed.), 390.  (2) The patent issued by the State to Chariton county was not void and 'conveyed the legal title, and plaintiff, grantee thereof, is entitled to maintain ejectment.  If defendant has a better equitable title, he must show it in equity.  Kennedy v. Daniels, 20 Mo. 104; Johnson v. Fleutsch, 176 Mo. 464; Romain v. Lewis, 39 Mich. 235; Smelting Co. v. Kemp, 104 U. S. 636; Carpenter v. Ingersol, 43 Mich. 433; French v. Fyan, 93 U. S. 172; Ehrhardt v. Hogaboom, 115 U. S. 67; Railroad v. Green, 15 Fed. 208.  (3)  Under the evidence and the findings of the court, defendant must rest his defense in this action on mere naked possession, and defendant can not assert the invalidity of the patent issued by the State to Chariton county.  It can only be questioned in a direct proceeding in a court of equity.  Parmlee v. Railroad, 7 Barb. 599, affirmed in 2 N. Y. 74; Railroad v. Green, 13 Fed. 208; Norville v. Camm, 6 Munford (Va.) 233; Jackson v. Lawton, 10 Johns. 23; Jackson v. Hart, 12 Johns. 77; Overton v. Campbell, 5 Haywood (Tenn.) 165.  (4) The patent from the State to Chariton county was a better legal title than any right to a patent that Livingston county might have had.  Cunningham v. Snow, 82 Mo. 587; DeLassus v. Winn, 174 Mo. 644; Steel v. Smelting & Refining Co., 106 U. S. 447.

*C. C. Bigger* for respondent.

(1)  The act of the General Assembly in relation to swamp lands, approved March 3, 1851, and subse-

quent acts relating thereto, was a present grant of swamp lands to the counties in which said lands were then situated, in trust for the common school fund. The tract of land involved in this suit was swamp land, and was a part of Linn county, at the date of the passage of said act, hence the legal title thereto was, by said act, passed to and vested in Linn county. Laws 1851, p. 238; Dunklin County v. Co. Court, 23 Mo. 449; Railroad v. Smith, 41 Mo. 310; Clarkson v. Buchanan, 53 Mo. 563; Campbell v. Wortman, 58 Mo. 258; Linville v. Bohanan, 60 Mo. 554; Mitchell v. Nodaway County, 80 Mo. 257; Railroad v. Hatton, 102 Mo. 45. (2) By the act approved January 10, 1855, the land in question, together with other lands, was detached from Linn county and attached to and made a part of Livingston county, of which county it has since been and is yet a part. Laws 1855, p. 17. By an act approved February 28, 1855, the Legislature authorized and empowered the several counties of this State to sell and dispose of all swamp lands within their respective limits. Laws 1855, p. 160. By the act approved March 27, 1868, the Legislature donated the swamp lands in this State to the respective counties in which said lands were situated, and declared the same to be the absolute property of the counties, for the purpose of being sold for the benefit of the public school fund. Laws 1868, p. 69. Whether these acts of the Legislature had the effect of transferring the legal title to the land in suit to Livingston county is not material to the issues in this suit. For, while the legal title may be yet in Linn county, or, if not in Linn county, in the defendant holding under Livingston county, yet, in any event, it never was owned by Chariton county, under whom plaintiff claims. An outstanding title, superior to plaintiff's title, having been shown, prevents his recovery. Plaintiff must recover on the strength of his own title and not on the weakness of defendant's. Schanewerk v. Hoberecht, 117 Mo. 22; Snuffer v. Howerton, 124 Mo.

637; West v. Bretelle, 115 Mo. 653; Harwood v. Tracy, 118 Mo. 631. (3) The act approved March 10, 1869 (Laws 1869, p. 66), was intended to be supplementary to and in aid of previous acts relating to swamp lands. The act did not attempt to create or convey any new or additional title to the swamp lands in the various counties of the State. Indeed, the first section of the act states that the patents therein directed to be prepared by the register of lands, executed by the Governor and attested by the Secretary of State, are for the purpose of conveying a complete title to the swamp lands to the various counties in which said lands were situated. Its only effect was to authorize the counties to issue the patents, instead of having them issued by the State. State ex rel. v. Crumb, 157 Mo. 545. (4) Under said act, the register of lands, the Governor and Secretary of State became the agents of the State to issue said patents; their powers and duties were defined and pointed out by the act itself; nothing was left to their discretion; they were directed to issue patents to the various counties to the swamp lands situated therein; they were bound to observe the county lines as they existed at the date of the act and be guided by them in issuing patents to the various counties; they had no power or authority to patent lands in one county to another county. State ex rel. v. Register of Lands, 48 Mo. 59. (5) Public agents, whose duties are pointed out and defined by an act of the Legislature, are bound to pursue the strict provisions of the act itself, and any act done by such agents in violation of or contrary to the provisions of the statute under which they are acting, is void. The land involved in this suit, at the time the act of March 10, 1869, was passed by the Legislature, as well as the time the patent thereto was issued to Chariton county, was in and constituted a part of Livingston county, hence said patent, in so far as it attempted to convey said land to Chariton county in violation of said act, is inoperative and void. State ex

rel. v. Register of Lands, supra; State v. Bank, 45 Mo. 528; Heidelberg v. St. Francois Co., 100 Mo. 69; McKissick v. Mt. Pleasant Tp., 48 Mo. App. 416; Kolkmeyer v. City of Jefferson, 75 Mo. App. 678; Sturgeon v. Hampton, 88 Mo. 211; Saline County v. Wilson, 61 Mo. 237; State ex rel. v. Crumb, 157 Mo. 545.

BRACE, P. J.—This is an action in ejectment to recover possession of the following described real estate situate in the county of Livingston, to-wit: "All of that part of the west half of the northwest quarter of section four in township fifty-six, range twenty-one, lying west of Locust creek, containing sixty-five acres, more or less." The petition is in common form. The answer, after admitting possession, is a general denial. The case was tried before the court without a jury; finding and judgment were for the defendant, and plaintiff appeals.

The land in controversy was swamp land within the provisions of the act of Congress of September 28, 1850, and of the confirmatory act of March 3, 1857, granting this and other lands to the State of Missouri, in pursuance of which a patent was issued from the General Government to the State, dated August 13, 1858.

By an act of the General Assembly, approved March 3, 1851, all of the swamp lands aforesaid, except such as were situate in ten counties therein named, of which Linn county in which the land in question was then situate was not one, were donated by the State "to the counties in which said lands respectively may be situated." [Laws 1850-51, p. 238.]

At the time this act was passed the land in controversy, as stated, was situate in Linn county, Locust creek being the boundary line between that and Chariton county; but by an act of the General Assembly, approved January 10, 1855 (Laws 1854-5, p. 17), it was attached to Livingston county, and ever since has been

situate therein. The defendant offered in evidence a chain of title from Livingston county, but as the case turned upon the plaintiff's title that chain of title need not be set out. By an act of the General Assembly, approved March 10, 1869, (Laws 1869, p. 66.), it was enacted as follows:

"Section 1. In order to convey to the different counties in the State of Missouri a complete title to all the swamp and overflowed lands, which were granted and have been patented to the State of Missouri by an act of Congress, entitled, 'An act to enable the State of Arkansas and other States to reclaim the swamp lands within their limits,' approved September 28, 1850, the register of lands is hereby directed to prepare a patent or patents, embracing all the swamp or overflowed lands, lying within the limits of the several counties of this State, conveying thereby all the title and interest of the State of Missouri in and to such lands, to the counties in which such lands may lie; and when such patents have been prepared as herein provided, they shall be presented to and signed by the Governor of this State, attested by the Secretary of State, and recorded by the register of lands in his office.

"Sec. 2. Whenever possible so to do, all the overflowed and swamp lands situate in any one county shall be included in one patent, and described numerically by sections, townships and ranges, having due regard for county lines.

"Sec. 3. That it shall be the duty of the officers named in the first section of this act to convey, by patent or patents, as herein provided, all such overflowed and swamp lands as may hereafter be patented to the State of Missouri by the Government of the United States to the respective counties in which the same may lie.

"Sec. 4. It shall be the duty of the register of lands to forward all patents when the same shall be executed and recorded as required by the foregoing sec-

tion of this act, to the clerks of the several county courts of this State, and so soon as the same shall be received by said clerks, the several county courts shall cause the same to be duly recorded in the recorder's office of their respective counties, as other conveyances are required by law to be recorded.

"Sec. 5. That any patent or patents issued, executed and duly recorded as required by this act, or a certified copy of the same, which shall include all the land therein described, or which shall include any separate and distinct description of the lands therein described, either under the hand of the register of lands or the recorder of the proper county, shall be received and read in all the courts in this State as prima facie evidence of the title in the counties where such overflowed and swamp lands severally lie.

"Sec. 6. The several county courts shall have full power and control over all such overflowed and swamp lands patented to their respective counties under the provisions of this act, and to sell and dispose of the same in like manner and with like effect as now provided by the general statutes in relation to the conveyance of other real estate belonging to their respective counties.

"Sec. 7. That from and after the passage of this act, the register of lands shall not issue patents to any individuals for any overflowed and swamp lands, situate in the several counties of this State.

"Sec. 8. Nothing in this act shall be so construed as to require the register of lands to patent to the several counties, as herein provided, any tract or tracts of such overflowed and swamp lands, which have prior to the passage of this act been patented to any person or persons by the State of Missouri.

"Sec. 9. That so much of all laws in relation to overflowed and swamp lands as are inconsistent with the provisions of this act, are hereby repealed.

"Sec. 10. This act to take effect and be in force from and after its passage."

In pursuance of this act a patent dated November 12, 1869, was duly issued, conveying the west half of the northwest quarter of section 4, township 56, range 21, to the county of Chariton, which of course included the land in controversy, and thus it was that this land which never was in Chariton county, and never was donated to Chariton county by the State, was nevertheless patented to that county, and under this patent the plaintiff claims title to the premises by means of a conveyance to him by the county of Chariton, dated May 1, 1893.

The circuit court by its rulings in effect held, that the legal title to the premises (with which we have only to do, in this action) was vested in the State of Missouri by the patent from the United States dated August 13, 1868, and that such title did not pass to Chariton county by the patent from the State to that county dated November 12, 1869. Hence, the legal title did not pass to the plaintiff by the conveyance from that county, and hence the judgment for the defendant. Counsel for plaintiff contend that the court erred in so ruling. That the patent from the State to the county is of equal probative force with the patent from the United States to the State, and that the probative force of the State patent is to conclusively establish legal title to the premises in Chariton county.

As to United States patents the rule on this subject is well stated in an opinion by MACFARLANE, J., in Cummings v. Powell, 116 Mo. l. c. 477, as follows: "It is well settled under the decisions of this State and of the United States, that even in actions at law, the validity of a patent, though in due form, is subject at all times to the inquiry whether the officers of the government who issued it 'had the lawful authority to make a conveyance of the title. But if those officers acted without authority; if the land which they purported to

convey had never been within their control, or had been withdrawn from that control at the time they undertook to exercise such authority, then their act was void for want of power in them to act on the subject-matter of the patent, not merely voidable. . . . . It is, nevertheless, a clear distinction, established by law, and it has been often asserted in this court, that even a patent from the government of the United States, issued with all the forms of law, may be shown to be void by extrinsic evidence, if it be such evidence as by its nature is capable of showing a want of authority for its issue.' These extracts from the opinion of Justice MILLER in Doolan v. Carr, 125 U. S. 625, and the cases cited are sufficient to show the recognized rule.''

The extrinsic evidence in this case which showed a want of authority for the issue by the State officers of a patent to the premises to Chariton county, was the fact that the land was not situate in that county, and by the act under which it was issued those officers had authority only to issue patents to that county for lands situate in that county, as is apparent on the face of the statute itself, for which purpose it has been set out at length. So that even if such patent was of equal probative force with a patent from the United States government, it would seem to come within the rule announced and would be void for want of authority for its issue. But the probative force of the patent itself was limited by the very statute which authorized its issue, by which it was provided that such patents shall only be ''prima facie evidence of title in the counties'' in which such lands lie. How, then, could such a patent be conclusive evidence of title in a county in which the land did not lie? To this absurdity is the argument of counsel for appellant reduced. The patent to Chariton county being only prima facie evidence of title in that county, that evidence might be rebutted, and being entirely overcome by the admitted fact that the land was in Livingston county, and never had been in Chariton

county since the grant to the State, the plaintiff showed no legal title to the premises and the court committed no error in so holding. The judgment of the circuit court is, therefore, affirmed.

All concur.